# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APRIL DAVIS<br>325 Fram Street<br>Pittsburgh, PA 15208 | CIVIL ACTION |
| Plaintiff, | No. _____ |
| v. | |
| | **JURY TRIAL DEMANDED** |
| TRG CUSTOMER SOLUTIONS, INC.<br>*d/b/a* IBEX GLOBAL SOLUTIONS<br>200 Industry Drive<br>Pittsburgh, PA 15275<br>and<br>IBEX GLOBAL SOLUTIONS PLC<br>1700 Pennsylvania Avenue Northwest<br>Suite 560<br>Washington, D.C. 20006 | |
| Defendants. | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by April Davis (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against TRG Customer Solutions, Inc. *d/b/a* IBEX Global Solutions and IBEX Global Solutions PLC (*hereinafter* referred to as "Defendants" unless indicated otherwise) for violations of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000d *et seq.*) and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under Title VII. Plaintiff's PHRA claims however will mirror identically her federal claims under Title VII.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Western District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. TRG Customer Solutions, Inc. *d/b/a* IBEX Global Solutions provides business process outsourcing services for Fortune 100 companies through its global network of contact

centers. Plaintiff was hired through and at worked at the contact center located at 200 Industry Drive, Pittsburgh, Pennsylvania. TRG Customer Solutions, Inc. operates as a subsidiary of IBEX Global Solutions PLC.

9. IBEX Global Solutions PLC, upon information and belief, is the parent company of TRG Customer Solutions, Inc., with an address as set forth in the caption.

10. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they made be treated as a single and/or joint employer for purposes of the instant action.

11. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff is an adult female.

14. Plaintiff was employed by Defendants as a customer service representative from in or about January of 2015 until her unlawful termination (as discussed *infra*) on or about August 8, 2018.

15. During the course of her employment with Defendants, Plaintiff was a hardworking employee who performed her job well.

16. At all relevant times herein, Plaintiff was primarily supervised by Devaughn Clark (*hereinafter* "Clark") and Waleed Almugahid (*hereinafter* "Almugahid") and generally supervised

3

by Operations Managers, Jeff Kerchner (*hereinafter* "Kerchner") and Lisa Pierson (*hereinafter* "Pierson").

17. During the last several months of her tenure with Defendants, Plaintiff and other female employees were repeatedly and regularly subjected to unwelcomed sexual comments/gestures/touching by Clark. By way of example, but not intended to be an exhaustive list:

    a. Clark made sexually offensive comments to Plaintiff about her body on multiple occasions, including "woo, does your butt wiggle; I know you wear no panties," "I know your stuff is wet because you're a big girl," and "go in the bathroom, put your fingers in there, and take them out so I can smell them";

    b. Clark informed Plaintiff on several occasions that he wanted to have sex with her, stating "meet me down at the hotel," "I can make you feel better than your man," and "I want you up on the third floor so I can taste you";

    c. On at least one occasion, Clark informed Plaintiff and another female co-worker, Shalice (last name unknown, *hereinafter* "Shalice"), that he could "handle [having sex with] both of them together"; and

    d. Clark slapped Plaintiff's buttocks on multiple occasions.

18. Throughout her tenure with Defendants, Plaintiff tried her best to either ignore Clark's aforementioned unwanted harassment or indicate through her complaints, actions, and body language that she was uncomfortable with his advances, comments, and touching.

19. Plaintiff complained of and objected to the aforementioned incidents of sexual harassment to Defendants' management and human resources throughout the latter part of her tenure with Defendants.

20. For example, following Clark's aforementioned sexually offensive comments to Plaintiff, Plaintiff reported Clark's conduct to Kerchner.

21. Following Plaintiff's complaints of sexual harassment to Kerchner, Plaintiff was called in to a meeting with Kerchner and Clark, during which Kerchner asked both Plaintiff and Clark "what can we do about this situation." Clark denied that there were any issues, and Kerchner informed Clark and Plaintiff that "we will get back to this," but did not meaningfully address Plaintiff's concerns.

22. In addition to meeting with Kerchner, Plaintiff reported Clark's aforementioned sexually offensive conduct to her former supervisor, Melissa Cowley (*hereinafter* "Cowley"), who advised Plaintiff that she would "keep an eye on [Clark]."

23. Plaintiff also reached out to Pierson regarding Clark's aforementioned sexually offensive conduct and requested a transfer to another supervisor; Pierson claimed that she would contact human resources, but no one from human resources reached out to Plaintiff.

24. Instead of investigating or addressing Plaintiff's aforesaid claims of sexual harassment, Defendants' management, including but not limited to Clark, Kerchner, and Pierson subjected Plaintiff to severe and pervasive harassment through pretextual discipline, verbal reprimands, and disparate treatment. For example, but not intended to be an exhaustive list:

   a. Defendant's management began to consistently scrutinize and criticize Plaintiff's work;

   b. Clark continued to subject Plaintiff to sexually offensive and harassing comments;

   c. Clark threatened to have his sister and others meet Plaintiff in the parking lot to "beat her butt"; and

   d. Plaintiff was provided with written discipline and ultimately terminated from her employment with Defendants on three separate occasions (for days or weeks at a

time) in late April, May, and June of 2018 for pretexual reasons (i.e., Clark inaccurately reported her attendance and did not inform human resources of Plaintiff's doctor's notes for time off). Plaintiff was reinstated each time after human resources determined that the reasons for her termination were either false or exaggerated.

25.     As a result of Defendants' managements' failure to investigate her claims of harassment and retaliation, Plaintiff complained to multiple levels of Defendants' management and human resources, including but not limited to Kerchner and Pierson, that she believed the negative treatment she was receiving was in retaliation for her prior complaints of sexual harassment.

26.     Despite Plaintiff's repeated complaints of sexual harassment and retaliation to Defendants' management and human resources, Defendants' management continued to subject Plaintiff to animosity and hostility through disparate treatment and pretextual admonishment, and Clark continued to subject Plaintiff to sexually offensive comments. For example, but not intended to be an exhaustive list:

   a. Defendants' management continued to scrutinize and criticize Plaintiff's work;

   b. Even though Plaintiff was transferred from Clark's team to a new team under the supervision of Almugahid after her first reinstatement following termination for pretextual reasons in April of 2018 (as discussed *supra*), Clark continued to follow her and subject her to sexually harassing comments including, "mmh, mmh, mmh, you should have given me that chance, now it's too late;"

   c. Upon Plaintiff's information and belief, after her second reinstatement following termination for pretextual reasons in May of 2018, Defendants' management

   directed at least one supervisor to monitor all of Plaintiff's phone calls and inform management if Plaintiff was so much as one minute late back from her breaks; and

  d. Several male supervisors did not want Plaintiff on their teams and refused to work with her because they were "scared to approach her and afraid to work with her" following her complaints of sexual harassment and retaliation.

27. On or about August 8, 2018, in close proximity to Plaintiff's most recent complaints of sexual harassment and retaliation (in response to her complaints of sexual harassment) Plaintiff was terminated from her employment with Defendants for pretextual reasons.

28. Even though Defendants' management knew that Clark sexually harassed Plaintiff on several different occasions (which upon information and belief is a terminable offense), they did not take any meaningful remedial action to correct Clark's behavior and, upon Plaintiff's information and belief, Clark remained employed with Defendants following Plaintiff's termination on or about August 8, 2018.

29. Plaintiff believes and therefore avers that she was issued pretextual discipline and terminated for having complained of sexual harassment and retaliation (in response to her complaints of sexual harassment).

## COUNT I
### Violations of Title VII
**([1] Sexual Harassment/Hostile Work Environment and [2] Retaliation)**
**-Against All Defendants-**

30. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31. During her tenure with Defendants, Plaintiff was subjected to severe and pervasive sexual gestures, comments, and touching by Defendants' Manager, Clark, such that she was subjected to a hostile work environment.

32. Clark's harassment of Plaintiff interfered with Plaintiff's work and as a result she was forced to complain of said sexual harassment to Defendants' management and human resources in advance of her termination.

33. Following Plaintiff's reports of sexual harassment, Plaintiff was subjected to increased hostility and animosity (as discussed *supra*).

34. As a result, Plaintiff complained to multiple levels of Defendants' management and human resources that she believed the increased negative treatment she was receiving was in retaliation for her prior complaints of sexual harassment.

35. Despite Plaintiff's repeated complaints of sexual harassment and retaliation to Defendants' management and human resources, Defendants' management continued to harass Plaintiff through disparate treatment, and pretextual discipline.

36. On or about August 8, 2018, in close proximity to Plaintiff's most recent complaints of sexual harassment and retaliation (in response to her complaints of sexual harassment), Plaintiff was terminated from her employment with Defendants for pretextual reasons.

37. Plaintiff believes and therefore avers that she was issued pretextual discipline and terminated from Defendants for having complained of sexual harassment and retaliation (in response to her complaints of sexual harassment).

38. These actions as aforesaid constitute unlawful violations under Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

KARPF, KARPF & CERUTTI, P.C.

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: July 11, 2019